AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| IN THE MATTER OF THE SEARCH OF A BLACK | ) | |
| iPHONE CURRENTLY IN THE POSSESSION OF | ) | Case No. 20-sw-298 |
| THE FEDERAL BUREAU OF INVESTIGATION | ) | |
| CURRENTLY LOCATED AT 2800 V ST NE, | ) | |
| WASHINGTON, D.C. UNDER RULE 41 | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein.

located in the _____ District of _____ Columbia _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113(a). | Bank Robbery |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SPECIAL AGENT JOSHUA SMITH-SHIMER
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date:  _____ 11/19/2020 _____

_____
*Judge's signature*

City and state:  Washington, D.C. _____

MAGISTRATE JUDGE ZIA M. FARUQUI
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means                    ☑ Original              ❒ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>IN THE MATTER OF THE SEARCH OF A<br>BLACK iPHONE CURRENTLY IN THE<br>POSSESSION OF THE FEDERAL BUREAU OF<br>INVESTIGATION CURRENTLY LOCATED AT<br>2800 V ST NE, WASHINGTON, D.C. UNDER<br>RULE 41 | )<br>)<br>)   Case No.  20-sw-298<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Columbia _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before _____ 12/3/2020 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ❒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ MAGISTRATE JUDGE ZIA M. FARUQUI _____ .
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❒ for ____ days *(not to exceed 30)*   ❒ until, the facts justifying, the later specific date of _____ .

Date and time issued:   _____ 11/19/2020 _____                 _____
                                                                                      *Judge's signature*

City and state:   Washington, D.C. _____                         MAGISTRATE JUDGE ZIA M. FARUQUI
                                                                                      *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br> 20-sw-298 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The property to be searched is:

1.      Black IPhone: unknown serial number or model number, with a black case and a sticker affixed that says "hop out da van", which is currently in the possession of the Federal Bureau of Investigation and is currently located at 2800 V ST NE, Washington, D.C. at the Washington Field Office's evidence control room of the Federal Bureau of Investigation.

2.      This warrant authorizes the forensic examination of this device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records within the devices described in Attachment A that relate to violations of Bank Robbery, in violation of 18 U.S.C. § 2113(a), including but not limited to:

       a.      names;

       b.      phone numbers;

       c.      addresses;

       d.      multi-media messages;

       e.      voice messages;

       f.      text messages;

       g.      stored photographs and images;

       h.      graphic images;

       i.      audio files;

       j.      video files;

       k.      email messages;

       l.      internet search history;

       m.      GPS locations;

       n.      geographic locations;

       o.      lists of sent and received calls;

       p.      lists of sent and received e-mails;

       q.      lists of sent and received text messages;

       r.      any information recording schedule or travel.

2.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK iPHONE CURRENTLY IN THE POSSESSION OF THE FEDERAL BUREAU OF INVESTIGATION CURRENTLY LOCATED AT 2800 V ST NE, WASHINGTON, D.C. UNDER RULE 41 | No. 20-sw-298 **UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

1.      I, Joshua Smith-Shimer, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

2.      I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3.      I have been a Special Agent with the Federal Bureau of Investigation since June 2015. I am currently assigned to the FBI Washington Field Office ("WFO") in Washington, D.C. I am currently assigned to the Violent Crimes Task Force Squad CR-2, which focuses on the Washington, D.C. metropolitan area. As part of my duties, I have investigated bank robberies, kidnappings, fugitive cases, and other crimes of violence.

4.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure to search the cellular devices seized from Micheal Antonio SMITH pursuant to his arrest on October 3, 2020.

1

5.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of one cellular telephone seized as a result of criminal complaint number 20-060-893: black IPhone: unknown serial number or model number, with a black case and a sticker affixed that says "hop out da van" ("TARGET DEVICE"), which is currently in the possession of FBI in Washington, D.C.

6.      As discussed below, the TARGET DEVICE was recovered from Micheal Antonio SMITH ("SMITH"). On October 3, 2020, at approximately 1:00 p.m., members of FBI were conducting surveillance in the area of 34 South 11th Street in Philadelphia, Pennsylvania, due to agents locating a Tesla Model S tied to SMITH parked in the area earlier that afternoon. While on surveillance, agents observed SMITH. As agents and officers moved in to arrest him, SMITH either dropped or threw the TARGET DEVICE near the aforementioned Tesla before running from the arrest team. After SMITH was taken into custody following a brief pursuit and returned to the vicinity of the Tesla, he was shown the TARGET DEVICE and asked if it was his phone. SMITH looked at the phone and confirmed that it was his phone. The TARGET DEVICE was subsequently placed into evidence at the time SMITH was processed subsequent to his arrest

7.      The facts and information contained in this affidavit are based upon my training and experience, participation in this and other investigations, personal knowledge, and observations during the course of this investigation, as well as the observations of other federal agents and individuals involved in this investigation. All observations not personally made by me were relayed to me by the individuals who made them or were conveyed to me by my review of the records, documents, and other physical evidence obtained during the course of the investigation. This affidavit is meant to convey information necessary to support probable cause for the requested search warrant and is not intended to include each and every fact observed by me

or known to the government. Instead, this affidavit contains only those facts which are necessary to establish that probable cause exists to prove that fruits, evidence, and instrumentalities of three counts of Bank Robbery, in violation of 18 U.S.C. § 2113(a).

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

8.      Based on your affiant's training and experience, your affiant uses the following technical terms to convey the following meanings:

a.      Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be

3

retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

        c.      Portable media player: A portable media player (or "MP3 Player") is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

        d.      GPS: A Global Positioning System ("GPS") navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer

connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

f.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

g.      Based on your Affiant's training, experience, and research, your Affiant has reason to believe that the black IPhone: unknown serial number or model number, with a black case and a sticker affixed that says "hop out da van" (Black iPhone) has capabilities that allows it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and internet search device. In your Affiant's training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

h.      Based on your Affiant's knowledge, training, and experience, your

5

Affiant knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

       i.      Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Black iPhone was used and when. There is probable cause to believe that forensic electronic evidence might be on the Black iPhone, to include photos of money obtained during the three bank robberies, photos of the subject wearing the clothing observed during the robberies, or text messages referencing the robberies.:

       j.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

       k.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

       l.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

       m.      The process of identifying the exact electronically stored information on a

storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

n.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

o.     Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your affiant is applying for would permit the examination of the Black iPhone consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Black iPhone to human inspection in order to determine whether they contain evidence described by the warrant.

p.     Manner of execution. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.

## ITEM TO BE SEARCHED

7.     This affidavit is being submitted in support of an application that seeks authorization to search the Black iPhone, currently in the possession of the Federal Bureau of Investigation. The Black iPhone is currently located at 2800 V ST NE, Washington, D.C. at the

Washington Field Office's evidence control room.

9.      Based on the information provided in this affidavit, your Affiant respectfully submits that probable cause exists that fruits, evidence, and instrumentalities of three counts of Bank Robbery, in violation of 18 U.S.C. § 2113(a)., will be found, specifically those items set forth in Attachment B, are contained within the Black iPhone identified in Attachment A.

### PROBABLE CAUSE  Bank Robberies on September 29, 2020

8.      On September 29, 2020, at approximately 12:18 p.m., the defendant, later identified as Micheal Antonio SMITH, entered the Wells Fargo Bank located at 3200 Pennsylvania Avenue, Southeast, Washington, D.C., an entity whose deposits are insured by the Federal Deposit Insurance Corporation. While inside, SMITH approached a bank employee (W-1) at their teller window and provided them with a demand note. After reading the note, W-1 attempted to logon to their computer. After a short period of time, SMITH asked the teller for the note back and left without any money. According to W-1, the note said: "No sudden moves, large bills only. No dye pack."

9.      A photograph of the defendant is depicted below, both at the teller, and leaving the bank:





10.     On September 29, 2020, at approximately 12:59 p.m., SMITH entered the Wells Fargo Bank located at 609 H St, Northeast, Washington, D.C., an entity whose deposits are insured by the Federal Deposit Insurance Corporation. While inside, SMITH approached a bank employee (W-2) at their teller window and provided them with a demand note. The approximated verbiage of the demand note was "This is a robbery. Act calm give me all hundreds." The bank teller then turned over approximately $100 of bank funds to SMITH. SMITH then demanded the note back and fled the bank. Upon exiting the bank, SMITH turned south on 6th St NE and entered an unoccupied grey Tesla Model S, parked near the intersection of 6th and G St NE. SMITH then proceeded west on G St.

11.     A photograph of the defendant is depicted below, both at the teller, and leaving the bank:





12.     On September 29, 2020, at approximately 2:23 p.m., SMITH, entered the Wells Fargo Bank located at 1934 14th St Northwest, Washington, D.C., an entity whose deposits are insured by the Federal Deposit Insurance Corporation. Upon approaching the bank, SMITH advised a Wells Fargo customer service representative (W-3) that he needed to cash a check. W-3 and SMITH then proceeded to a teller station where SMITH proceeded to pass a note to W-3. W-3 advised that they thought it was a check needing to be cashed, when in fact it was a demand note. W-3 advised the note was difficult to read, but said something to the effect of "please put all the money in the bag." SMITH then said to the teller: "I'm sorry, I'm going through some stuff." SMITH then put his hand inside of his jacket near the armpit area, an act that W-3 believed to be SMITH indicating that he may have had a handgun under his jacket in a shoulder holster. SMITH never relinquished possession of the demand note. SMITH then provided W-3 with a clear plastic bag. W-3 then placed $1,410 in cash into the bag. SMITH then fled the bank.

13.     A photograph of the defendant is depicted below, both at the teller, and leaving the bank:





**Identification of SMITH via STEER EV**

14.     On September 30, 2020, FBI agents and Task Force Officers assigned to the FBI Washington Field Office's Violent Crime Task Force began reviewing D.C. Department of Transportation (DDOT) cameras in the areas surrounding the three Wells Fargo banks that were robbed the preceding day. Agents focused their search on a Tesla Model S matching the description of the vehicle that SMITH was observed in following the second robbery, driving in the vicinity of each Wells Fargo Bank, around the time of the robberies.

15.     During this video review, a Tesla Model S – similar in color to the vehicle SMITH was observed fleeing in - bearing D.C. license plate GE 2585, was observed driving westbound by the DDOT camera located at 2800 Benning Road in Northeast D.C. Upon observing a Tesla driving westbound on Benning Road, in the direction of the second Wells Fargo bank at 12:35 p.m., 25 minutes before it was robbed, Agents pulled historical license plate reader (LPR) information for D.C. license plate GE 2585.

16.     A review of the historical data showed that the Tesla Model S, bearing D.C. license plate GE 2585, passed a DDOT camera located at 2700 Pennsylvania Ave SE. Four minutes later, the vehicle pulled into the Penn Branch Shopping Center. The Wells Fargo Bank that was the victim bank in the first robbery is located in the Penn Branch Shopping Center. Historical LPR data for the date of the robberies also showed the vehicle's proximity to two of the three banks, as well as a photo of the Tesla as it traveled by a DDOT camera:



17.     Having observed a Tesla Model S in the vicinity of two of the three banks within half an hour of those banks being robbed, and in different quadrants of the city, agents requested the registration for D.C. license plate GE 2585, and determined that the vehicle is registered to Exelorate Enterprises LLC, with an address in Northwest, Washington, D.C. Agents determined that Exelorate Enterprises LLC is the parent company of Steer EV, a Washington, D.C. based monthly vehicle subscription service, specializing in electric vehicles. According to Steer EV's website, Steer EV allows renters to pay a monthly fee which then provides them with unlimited access to a vehicle. While other services provide vehicles for renters to use and then park back on the street for another renter to then use, Steer EV is unique in that one car is assigned to only one renter for the duration of their rental period, or until the renter "turns in" their current electric vehicle for another.

18.     On October 1, 2020, agents served a subpoena on Steer EV for any registration, billing, and contact information for the individual who was in possession of the Tesla Model S in question on September 29, 2020. Agents verified that Micheal Antonio SMITH was the renter of the vehicle beginning September 25, 2020. Steer EV provided billing information for SMITH's account, which also matches the address listed on SMITH's Washington, D.C. driver license. A photograph of the defendant's license is depicted below:



19.     The photograph of SMITH on his driver license matches surveillance footage of the bank robbery suspect in all three robberies. Although the robber suspect wore a hooded sweatshirt with specific characteristics, including a unique logo, and a mask inside all three banks, he was captured by surveillance video footage leaving the last bank without the hood or mask. That photograph is depicted below:



**Tesla's Location During 9/29 Bank Robberies**

20.     In addition to providing the responses to the subpoena served on October 1, 2020,
separate and apart from the subpoena responses, Steer EV voluntarily provided agents with
historical GPS data for the Tesla rented to SMITH. The data provided shows SMITH's Tesla near
all three banks in question, at or around the time they were robbed.

21.     Specifically, the data provided shows that SMITH's rented Tesla parked near the
first Wells Fargo at 12:18 p.m., moments before the robbery at 3200 Pennsylvania Avenue S.E.
The data then shows the vehicle traveling from the first bank to the second bank, located at 609 H
Street S.E. This time, the vehicle parked near the Wells Fargo, at 1:02 p.m., moments before the
second bank robbery. Finally, the data shows the Telsa leaving the second bank, and traveling to
the vicinity of 14th Street N.W., the location of the third Wells Fargo bank, located at 1934 14th
Street N.W. The data shows that the vehicle briefly stopped before getting to the third bank. The

vehicle came to a stop at 2:17 p.m. near the bank, six minutes prior to the third bank robbery. After the third bank robbery, the vehicle remained near the bank until approximately 2:26 p.m.

**Additional Anonymous Tip**

22.     As part of its investigation into the bank robberies on September 29, 2020, Detectives of the Metropolitan Police Department (MPD) issued a BOLO and Request for Information with photographs of the robbery suspect. On both September 29, 2020, and October 1, 2020, MPD Detectives received a tip indicating that the robbery suspect was known to the tipster "only as "Mike" and that "Mike" frequents the 930 Club, which is located at 1815 V Street, N.W. The tipster also provided a link to an Instagram account for the person known as "Mike." The photographs visible on the Instagram account provided by the tipster match the Washington, D.C. driver license photograph of SMITH. MPD detectives also provided photographs of SMITH from a prior arrest, which also match the photographs visible on the Instagram account provided by the tipster.

**<u>CELL PHONE PROXIMITY TO SMITH AT TIME OF ARREST</u>**

23.     At the time of his arrest, SMITH was in possession of the Black iPhone. As agents and officers moved in to arrest him, SMITH either dropped or threw the phone near the aforementioned Tesla before running from the arrest team. After SMITH was taken into custody following a brief pursuit and returned to the vicinity of the Tesla, he was shown the Black iPhone and asked if it was his phone. SMITH looked at the phone and confirmed that it was his phone. The phone was subsequently placed into evidence at the time SMITH was processed subsequent to his arrest.

**AUTHORIZATION TO SEARCH AT ANY TIME OF THE DAY OR NIGHT**

24.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. I further request that the Court permit the search warrant to be executed at any time given that the TARGET DEVICE is contained on the premises of the FBI in Washington, D.C.

25.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to perform a forensic digital extraction of the TARGET DEVICE outside of daytime hours as the search will be conducted in a law enforcement setting over a potentially prolonged period of time.

**CONCLUSION**

26.     Based on your affiant's training and experience, your affiant believes a search of the Black iPhone may reveal evidence pertaining to three counts of Bank Robbery in violation of 18 U.S.C. § 2113(a). Your Affiant submits that this Affidavit supports probable cause for a search warrant authorizing the examination of the Black iPhone, as described in Attachment A to seek the items described in Attachment B.

SPECIAL AGENT JOSHUA SMITH-SHIMER
FEDERAL BUREAU OF INVESTIGATION

*Subscribed and sworn via telephone pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on November 19, 2020.*

ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE